J-S53040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDRE DUNN, | : | |
| | : | |
| Appellant | : | No. 468 MDA 2015 |

Appeal from the Judgment of Sentence entered on December 20, 2013
in the Court of Common Pleas of Berks County,
Criminal Division, No. CP-06-CR-0004288-2013

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 19, 2015**

Andre Dunn ("Dunn") appeals from the judgment of sentence imposed

following his convictions for simple assault and harassment.[1]  We affirm.

The trial court aptly summarized the facts as follows:

> On August 30, 2013, around 2:00 p.m., Denzel Jones
> ["Jones"] and his mother, Angela Brockington ["Brockington"],
> were at their home at 1955 Alsace Road in Reading,
> Pennsylvania.  Jones had recently ended a relationship with
> Essence Cook ["Cook"], the mother of his children.  Cook had
> previously lived at the residence for approximately four years,
> and she was in the process of moving out.  Cook had been told
> to come to the house to retrieve her belongings.
>
> Cook arrived at the house with [Dunn] and another male,
> known only as "Black."  Cook met [Dunn] at Adappt, a halfway
> house in Reading, where [Dunn] had been sent from prison.
> [Dunn] and [Black] are acquaintances who met in state prison.
> Brockington and Jones talked to Cook, instructing her to go
> upstairs so that they could talk in private; they did not know
> either of the men with her.  Cook and Jones began talking
> upstairs, but the conversation devolved into an argument.

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1); 2709(a)(1).

Though Jones never hit or harmed Cook, she bit his arm and scratched him. Cook pushed Jones aside and unlocked the front door. [Dunn] and the other male burst into the house. Throughout the earlier argument, the two men had been banging on both the back and front doors to the residence.

Once inside, [Dunn] and the other male immediately attacked Jones. Kicking and punching, they knocked him to the ground and landed blows to his head, upper body, face, and elsewhere. Eventually, Cook yelled to [Dunn] and the other man that they should leave.

As a result of the attack, Jones suffered two black-and-blue eyes, injuries to his nose and lip, and a rib injury. He went to the hospital two days later, where he was warned of possible internal bleeding. He stayed at [the] hospital for two days.

Trial Court Opinion, 4/22/15, at 2 (citations omitted).

On December 20, 2013, following a non-jury trial, Dunn was convicted of the above-mentioned crimes. The trial court sentenced Dunn to 9 to 24 months in prison, with credit for 112 days of time served.

Dunn filed a timely Notice of Appeal on January 2, 2014. The trial court ordered Dunn to file a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal. Dunn filed a Motion for Enlargement of Time to File a Concise Statement on January 24, 2014. The trial court granted the Motion, allowing Dunn an additional 21 days to file a Concise Statement. Because Dunn still did not file a Concise Statement, this Court dismissed the appeal on February 24, 2014.

On July 11, 2014, Dunn filed a *pro se* Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The PCRA court appointed Dunn PCRA counsel, who filed an Amended PCRA Petition.

Following an agreement between PCRA counsel and the Assistant District Attorney, the PCRA court reinstated Dunn's direct appeal rights *nunc pro tunc* on February 12, 2015. Dunn subsequently filed a Notice of Appeal and a court-ordered Concise Statement.

On appeal, Dunn raises the following question for our review: "Did the Commonwealth fail to prove beyond a reasonable doubt that [Dunn's] actions were not lawfully in defense of others?" Brief for Appellant at 4.

Dunn argues that the evidence was insufficient to support his convictions because the Commonwealth failed to disprove Dunn's claim of defense of others.[2] *Id.* at 9, 10, 12. Dunn claims that the trial court found his perspective "entirely unbelievable" without justifying its credibility findings. *Id.* at 10; *see also id.* at 12 (wherein Dunn argues that the trial court improperly weighed the fact that he and Cook met at a halfway house, and that he met Black in prison, in making a credibility determination against Dunn, without factual support for its finding that Dunn did not act in defense of Cook). Dunn also claims that the trial court did not properly consider Brockington's testimony that both Jones and Cook were yelling,

---

[2] To the extent that Dunn raises a claim of self-defense, we note that he did not raise this claim in his Concise Statement. Therefore, Dunn has waived this claim. **See Commonwealth v. Berry**, 877 A.2d 479, 485 (Pa. Super. 2005) (stating that "issues which are not raised in a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925 are waived on appeal."). Even if Dunn had properly raised a self-defense claim, this claim would also fail based on the discussion below.

- 3 -

which would support his defense of others claim that Cook needed his help.

*Id.* at 11.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

The Crimes Code defines simple assault as an "[attempt] to cause or intentionally, knowingly or recklessly [cause] bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is defined as the "[i]mpairment of physical condition or substantial pain." *Id.* § 2301.

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person strikes, shoves, kicks or

- 4 -

otherwise subjects the other person to physical contact, or attempts or threatens to do the same." *Id.* § 2709(a)(1).

Pennsylvania law permits the use of force against another person in limited circumstances, such as defense of others. *Id.* § 506. With regard to a claim of defense of others, the Crimes Code establishes the following:

> **(a) General rule.**—The use of force upon or toward the person of another is justifiable to protect a third person when:
>
> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
>
> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
>
> (3) the actor believes that his intervention is necessary for the protection of such other person.
>
> **(b) Exception.**—Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

*Id.*

> [A]s provided by statute and as interpreted through our case law, to establish the defense of [defense of others] it must be shown that[:] a) the slayer [or the other he seeks to protect] was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that [the other he seeks to protect] was in imminent danger of death or great bodily harm, **and that there was a necessity to use such force in order to save [the other] therefrom**; and c) [the other he seeks to protect] did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Hornberger*, 74 A.3d 279, 284-85 (Pa. Super. 2013) (emphasis in original) (citing and modifying *Commonwealth v. Hansley*, 24 A.3d 410, 420-21 (Pa. Super. 2011), for application to defense of others). A showing under this provision can vitiate the intent necessary for criminal responsibility. *See Commonwealth v. Jones*, 332 A.2d 464, 466 (Pa. Super. 1974); *see also Commonwealth v. La*, 640 A.2d 1336, 1346 (Pa. Super. 1994) (stating that the claims of self-defense and defense of others are generally addressed in the same manner). "In cases where [this defense is] an issue, the Commonwealth is required to prove beyond a reasonable doubt that the defense does not apply to the situation in order to sustain the conviction." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

Dunn testified at trial that he was sitting on the hood of his car when he started to hear screaming coming from the house. N.T., 12/20/14, at 43-44. Dunn testified that as he approached the residence, he could still hear Cook screaming, and he believed she was in distress. *Id.* at 48. He also stated that heard Jones "slamming" Cook and throwing her around. *Id.* at 50. He testified that "[w]hen [he] banged on the door it flew open and [] Jones came out and swung. [Jones] just came out swinging." *Id.* Dunn stated that he and Jones began to fight, and Brockington pushed them to the ground before backing Black into a corner. *Id.* at 48-49. Dunn testified that both he and Jones had been able to land punches before Cook broke up

the fight and asked Dunn to leave with her. *Id.* at 49-50. He stated that he had a "busted lip" and a scratch on his face as a result of the fight. *Id.* at 50.

The trial court found Dunn's testimony to be "entirely unbelievable." Trial Court Opinion, 4/22/15, at 5;[3] *see also Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (stating that "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim."). The Commonwealth cannot sustain its burden of proof by relying "on the [fact-finder's] disbelief of the defendant's testimony. . . . If there are other witnesses, however, who provide accounts of material facts, it is up to the [fact-finder] to reject or accept all, part or none of the testimony of any witness." *Smith*, 97 A.3d at 788 (internal quotations omitted); *see also Commonwealth v. Rivera*, 983 A.2d 1211, 1221 (Pa. 2009).

The trial court found that the testimony of both Jones and Brockington was "credible and accurate." Trial Court Opinion, 4/22/15, at 5. Brockington testified that both Jones and Cook were yelling loudly enough to be heard from outside. *See* N.T., 12/20/13, at 7, 12-13, 18. Brockington

---

[3] Further, although Cook's testimony tends to corroborate Dunn's version of the events, the trial court found that her testimony was not credible. *See* Trial Court Opinion, 4/22/15, at 5. The trial court noted that Cook admitted that she told a much different story to the arresting officer immediately following the incident. *See id.*; *see also* N.T., 12/20/13, at 69-73.

specifically testified that Jones did not punch, touch, throw or restrain Cook in any way. *Id.* at 7. Brockington also testified that Cook bit Jones on the arm and pushed him to the side to unlock the door. *Id.* at 8. Brockington testified that Dunn and Black burst into the house, and immediately knocked Jones to the ground and began to kick and punch him. *Id.* at 8-9. She stated that Jones was not the aggressor, and that he never hit or struck Dunn or Black. *Id.* at 14-15.[4]

Jones testified that during his conversation with Cook, she began to scream at him loudly enough for people outside to hear, but he remained calm. *See id.* at 23, 32. Jones testified that he could hear banging on the front door, and Cook bit him and scratched him to get to the door. *Id.* at 23-24. Jones stated that he made no physical contact with Cook. *Id.* at 37. Jones testified that when Cook opened the door, Dunn and Black lunged at him with closed fists and punched him in the face, head, and upper body. *Id.* at 24-25. He stated that he fell to the floor, and Black started to kick him. *Id.* at 25. Jones estimated that he was kicked and punched about 10 to 12 times before Cook asked them to leave. *Id.* at 25-26. He testified that he did not punch, kick, or lunge at Dunn. *Id.* at 34-35. Jones indicated that in addition to the bruise from Cook's bite, he sustained "two black and blue eyes, [] a busted nose, a busted lip and [a] rib injury." *Id.* at 24, 26.

---

[4] This portion of Brockington's testimony was also corroborated by the testimony of Officer Gaughan, who arrested Dunn later that night. Officer Gaughan testified that Dunn had no visible injuries at the time of arrest. N.T., 12/20/13, at 76.

Here, Brockington's and Jones's testimony demonstrates that Dunn did not act in defense of others. Indeed, Jones did nothing to provoke the attack. Thus, viewed in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence for the trial court to find, beyond a reasonable doubt, that Dunn was not acting in defense of others when he attacked Jones. *See Smith*, 97 A.3d at 788 (stating that the trial court was free to believe all, part or none of the evidence presented at trial, and to reject the testimony of those witnesses it determined were not credible.). Upon our review of the record, we find no reason to disturb the findings of the trial court. *See Melvin*, 103 A.3d at 40. Accordingly, the evidence is sufficient to sustain Dunn's convictions for simple assault and harassment.[5]

Judgment of sentence affirmed.

---

[5] To the extent that this portion of Dunn's argument relates to the trial court's credibility findings, we note that a challenge to the sufficiency of evidence cannot "include an assessment of the credibility of the testimony offered by the Commonwealth." *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003). Any claim seeking a reassessment of witness credibility is more properly characterized as a challenge to the weight of the evidence, and such a challenge must first be presented to the trial court. *Id.* at 714. Here, Dunn failed to raise a weight of the evidence challenge in the trial court, and is therefore waived on appeal. *See id.*; *see also* Pa.R.Crim.P. 607.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2015